UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICA Z WILLIG,<br>　　　　Plaintiff,<br>　　v.<br>NANCY A. BERRYHILL,<br>　　　　Defendant. | Case No. 16-cv-03041-MEJ<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 18, 25 |

## INTRODUCTION

Plaintiff Erica Z. Willig ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of Defendant Nancy A. Berryhill ("Defendant"), the Acting Commissioner of Social Security, denying Plaintiff's claim for disability benefits. Pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 18, 25. Pursuant to Civil Local Rule 16-5, the Motions have been submitted on the papers without oral argument. Having carefully reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS** Plaintiff's Motion and **DENIES** Defendant's Cross-Motion for the reasons set forth below.

## SOCIAL SECURITY ADMINISTRATION PROCEEDINGS

Plaintiff has a long history of psychological disorders, including depression and borderline personality disorder; she also suffers from migraines. On April 30, 2012, Plaintiff filed a claim for Disability Insurance Benefits, alleging disability beginning on September 1, 2010. AR 21. Plaintiff's date last insured was December 31, 2013. On November 14, 2012, the Social Security Administration ("SSA") denied Plaintiff's claim, finding that Plaintiff did not qualify for disability benefits. Plaintiff subsequently filed a request for reconsideration, which was denied on May 31, 2013. On June 20, 2013, Plaintiff requested a hearing before an Administrative Law Judge

("ALJ"). ALJ K. Kwan conducted a hearing on May 27, 2014. Plaintiff testified in person at the hearing and was represented by counsel, Richard P. Zieman. The ALJ also heard testimony from Vocational Expert ("VE") Lynda Berkley. *See* AR 23 (describing procedural history).

### A. The ALJ's Findings

The regulations promulgated by the Commissioner of Social Security provide for a five-step sequential analysis to determine whether a Social Security claimant is disabled.[1] 20 C.F.R. § 404.1520. The sequential inquiry is terminated when "a question is answered affirmatively or negatively in such a way that a decision can be made that a claimant is or is not disabled." *Pitzer v. Sullivan*, 908 F.2d 502, 504 (9th Cir. 1990). During the first four steps of this sequential inquiry, the claimant bears the burden of proof to demonstrate disability. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). At step five, the burden shifts to the Commissioner "to show that the claimant can do other kinds of work." *Id.* (quoting *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)).

The ALJ must first determine whether the claimant is performing "substantial gainful activity," which would mandate that the claimant be found not disabled regardless of medical condition, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i), (b). Here, the ALJ determined that Plaintiff had not performed substantial gainful activity since September 1, 2010. AR 23.

At step two, the ALJ must determine, based on medical findings, whether the claimant has a "severe" impairment or combination of impairments as defined by the Social Security Act. 20 C.F.R. § 404.1520(a)(4)(ii). If no severe impairment is found, the claimant is not disabled. 20 C.F.R. § 404.1520(c). Here, the ALJ determined that Plaintiff had the following severe impairments: depressive disorder, borderline personality disorder, anxiety disorder, and migraine headaches. AR 23.

---

[1] Disability is "the inability to engage in any substantial gainful activity" because of a medical impairment which can result in death or "which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

2

If the ALJ determines that the claimant has a severe impairment, the process proceeds to the third step, where the ALJ must determine whether the claimant has an impairment or combination of impairments that meet or equals an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience. 20 C.F.R. § 404.1520(d). Here, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets the listings. AR 24-26.

Before proceeding to step four, the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC refers to what an individual can do in a work setting, despite mental or physical limitations caused by impairments or related symptoms. 20 C.F.R. § 404.1545(a)(1). In assessing an individual's RFC, the ALJ must consider all of the claimant's medically determinable impairments, including the medically determinable impairments that are nonsevere. 20 C.F.R. § 404.1545(e). Here, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels but non-exertionally would be limited to unskilled tasks and should avoid dealing with the general public in performing her primary duties of the job. AR 26.

The fourth step of the evaluation process requires that the ALJ determine whether the claimant's RFC is sufficient to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f). Past relevant work is work performed within the past 15 years that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. 20 C.F.R. § 404.1560(b)(1). If the claimant has the RFC to do his past relevant work, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4) (iv). Here, the ALJ determined that Plaintiff was not capable of performing past relevant work through her date last insured. AR 30 (past relevant work included medical assistant, emergency medical technician, lab technician, phlebotomist, and veterinary technician).

In the fifth step of the analysis, the burden shifts to the Commissioner to prove that there

3

are other jobs existing in significant numbers in the national economy which the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c). The Commissioner can meet this burden by relying on the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). Here, based on the testimony of the vocational expert, Plaintiff's age, education, work experience, and RFC, the ALJ determined that Plaintiff could perform work as a janitor, laundry worker II, cleaner/housekeeper, and that each of these positions existed in significant numbers in the national economy. AR 30-31.

**B.     Medical Evidence of Record**

Although there are voluminous treatment records from Plaintiff's treating physicians in the AR, there is no evidence that any of Plaintiff's treating physicians submitted to the SSA medical source statements or RFC Assessments regarding Plaintiff. Two SSA consultants reviewed Plaintiff's medical records: one reviewed records through October 2012, and the second reviewed records through May 2013. After Plaintiff attended her hearing before the ALJ, she underwent psychological testing with SSA consulting examiner Dr. Janine Marinos, Ph.D. No medical expert testified at the hearing.

**C.     ALJ's Decision and Plaintiff's Appeal**

On November 3, 2014, the ALJ issued an unfavorable decision finding that Plaintiff was not disabled. AR 18-36. This decision became final when the Appeals Council declined to review it on April 4, 2016. AR 1-6. Having exhausted all administrative remedies, Plaintiff commenced this action for judicial review pursuant to 42 U.S.C. § 405(g) on June 6, 2016. *See* Compl. Plaintiff filed the present Motion for Summary Judgment on October 25, 2016. Mot., Dkt. No. 18. On January 26, 2017, Defendant filed a Cross-Motion for Summary Judgment. Cross-Mot., Dkt. No. 25.

**LEGAL STANDARD**

This Court has jurisdiction to review final decisions of the Commissioner pursuant to 42

U.S.C. § 405(g). The ALJ's decision must be affirmed if the findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (citation omitted). "Substantial evidence means more than a scintilla but less than a preponderance" of evidence that "a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (quoting *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)). The court must consider the administrative record as a whole, weighing the evidence that both supports and detracts from the ALJ's conclusion. *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989). However, "where the evidence is susceptible to more than one rational interpretation," the court must uphold the ALJ's decision. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Determinations of credibility, resolution of conflicts in medical testimony, and all other ambiguities are to be resolved by the ALJ. *Id.*

Additionally, the harmless error rule applies where substantial evidence otherwise supports the ALJ's decision. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990). A court may not reverse an ALJ's decision on account of an error that is harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)). "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

**DISCUSSION**

Plaintiff argues the ALJ erred in three ways. First, the ALJ erred in giving little weight to the opinion of consulting expert Dr. Marinos. Second, the ALJ erred in finding Plaintiff's testimony not entirely credible. Finally, the ALJ erred in failing to consider all of Plaintiff's limitations at Step 5 of the sequential evaluation analysis.

**A.    Dr. Marinos**

1.    <u>Applicable Standard</u>

Physicians opining about a claimant's condition "may render medical, clinical opinions, or

they may render opinions on the ultimate issue of disability—the claimant's ability to perform work." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). "Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(1)-(2)); *see also* 20 C.F.R. § 404.1527(d).

In order to reject the "uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (quotation and citation omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citation omitted). An ALJ can satisfy the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick*, 157 F.3d at 725. "The ALJ must do more than offer [] conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citation omitted).

An ALJ errs when he or she does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another. *See Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996). In other words, it is error for an ALJ not to offer a substantive basis before assigning little weight to the medical opinion. *See id.* Generally, the SSA will give greater weight to an opinion that is more consistent with the record as a whole. 20 C.F.R. § 416.927(c)(4).

2. Analysis

During the May 2014 hearing, the ALJ and Plaintiff's counsel discussed referring Plaintiff to an SSA examiner, and counsel asked whether the examiner would address the fact that Plaintiff's date last insured ("DLI") had expired on December 31, 2013. *See* AR 79-80. The ALJ stated "I don't know if they would do it directly. It's not – it's four months. It's not completely

6

remote." AR 79. The ALJ observed that "if it was a remote date I think I would be in agreement that [the evaluation is] probably not fruitful for anyone . . . . [W]ith the background, there's enough. And getting some historic context from her. They can flesh things out. So it would still have some value, I think." AR 80.

Dr. Marinos, an SSA psychological consultant, examined Plaintiff on July 8, 2014. AR 29 (citing Exhibit 10F (AR 981-984)). Dr. Marinos states she received no records to review and her evaluation is based on information obtained "solely" from Plaintiff. AR 981. Dr. Marinos summarized Plaintiff's personal, employment, medical, and psychiatric histories, and listed approximately twenty medications Plaintiff was currently taking for her physical and mental conditions. AR 981-82. Dr. Marinos observed that the evaluation "was limited in scope and based on a single, time-limited session of client contact. With these significant limitations in mind," Dr. Marinos diagnosed Plaintiff with depressive disorder not otherwise specified ("NOS"), bereavement (Plaintiff's father passed away in February 2014), and "borderline personality disorder, by history." AR 71, 984. She noted Plaintiff's scores on the evaluation "ranged from high average to mildly impaired[;]" that Plaintiff's "[i]mmediate recall for short stories fell in the moderately/severely-impaired range; on delayed testing, she scored in the severely-impaired range. Visual memory ranged from moderately impaired (immediate) to moderately-severely impaired (delayed). She scored in the borderline range on Trails A and B." AR 984. Dr. Marinos assigned Plaintiff a GAF score of 41-50[2], and concluded that "[b]ased on the current evaluation, it seems doubtful that the claimant would be able to maintain competitive employment at this time. [Plaintiff] noted that she benefitted from DBT [dialectical behavior therapy] in the past and

---

[2] "A Global Assessment of Functioning ['GAF'] score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM–IV") at 32 (4th Ed. 2000). A GAF score of 41−50 indicates '[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).' DSM–IV at 34." *Thomas v. Astrue*, 2009 WL 151488, at *3 n.5 (C.D. Cal. Jan. 21, 2009) (capitalization in original).

7

recently started another program. Hopefully, her condition will improve with treatment, but she will always be vulnerable to depressive episodes and have difficulty coping with stress and interacting appropriately with others due to her personality structure." AR 61-62, 984.

The ALJ gave little weight to Dr. Marinos' opinion for a number of reasons: Dr. Marinos examined Plaintiff approximately seven months after her DLI and did not review any of Plaintiff's medical records; many of Dr. Marinos' findings did not support her conclusion that Plaintiff would experience work-preclusive mental limitations; and her opinion was inconsistent with the medical evidence as a whole, which demonstrates Plaintiff typically displayed no recurring abnormalities on mental status examination aside from abnormal mood and affect that Plaintiff realized benefited from medication and treatment. AR 30. The ALJ instead gave "great weight" to the State agency psychologists who reviewed a "sizeable portion of the medical evidence"—but significantly did not review Dr. Marinos' opinions, and never examined Plaintiff. AR 29.

The ALJ erred in discounting Dr. Marinos' opinion. First, the ALJ erred in not correcting the SSA's failure to provide Plaintiff's medical records to Dr. Marinos. The ALJ explicitly premised her belief about the utility of an examination on the examiner's review of Plaintiff's records (AR 79-80), but did not ensure those records were transmitted to Dr. Marinos. Second, the fact the examination took place after the DLI does not necessarily render the examination irrelevant: "[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition." *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) (quoting *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1996)). The ALJ does not explain why an examination taking place seven months after the DLI was too remote in time to be useful, especially when she stated an examination performed four months after the DLI would "have some value" (AR 79-80). Third, the opinion of an examining physician generally is entitled to greater weight than the opinion of a non-examining physician (*Ryan*, 528 F.3d at 1198), and the "opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician (*Lester*, 81 F.3d at 831). Here, Dr. Marinos' findings regarding Plaintiff's

8

underlying diagnoses were corroborated by Plaintiff's treating psychologist Dr. James Goetz and treating psychiatrist Dr. Guy Guillon (*see, e.g.*, AR 360, 486, 493), and were based on in-person examination and psychological testing. The ALJ did not identify any other psychological examination that contradicted Dr. Marinos' findings; she only identified treatment notes documenting routine mental status examinations ("MSE"). There is no evidence in the record that MSE would document symptoms of borderline personality disorder that are likely to interfere with an individual's ability to work. On the contrary, Dr. Marinos also documented many normal findings in the MSE she conducted, but still found it doubtful Plaintiff would be able to maintain competitive employment. AR 982 (Plaintiff casually dressed and groomed; gait unremarkable; eye contact fair to poor; alert and fully oriented; good recall; did well on digit span but concentration fluctuated on other tasks; speech fluent and clear; comprehension grossly intact; affect restricted and mood depressed; denied auditory or visual hallucinations; thinking slow but linear and goal-directed; insight and judgment fair), 984. The SSA non-examining physicians on whom the ALJ based her conclusion did not review the results of Dr. Marinos' psychological testing—they only reviewed Plaintiff's medical records through October 2012 (Dr. Bradley, Ex. 1/A) and May 2013 (Dr. Weiss, Ex. 3/A). Fourth, the ALJ erred in "just counting 'normal' findings to hold up against the 'abnormal ones' without any explanation of relevance . . . . the ALJ's mere listing of other findings without any discussion of how or why they diminish significant and abnormal findings noted by Dr. Marinos provides no substantive basis for the ALJ's conclusion" (Mot. at 4). The ALJ erred by not explaining how the normal findings were inconsistent with the abnormal findings in light of Plaintiff's underlying conditions, and how the abnormal findings in and of themselves were insufficient to support Dr. Marinos' conclusion that Plaintiff had "work-preclusive mental limitations." AR 29. As described above, Dr. Marinos also made many "normal" findings when she conducted an MSE on Plaintiff, and still found Plaintiff would be unlikely to hold competitive employment. An ALJ must do more than simply "identify conflicting evidence;" she must explain how the normal findings conflicted with Dr. Marinos' conclusion. *See Ann Cox v. Colvin*, 2015 WL 8596436, at *15 (N.D. Cal. Dec. 14, 2015) (citation

1    omitted). Finally, there was no medical opinion in the record supporting the ALJ's weighing of
Dr. Marinos' psychological testing, whether from an SSA consultant or a medical expert. The
ALJ may be able to articulate legally-sufficient reasons for giving little weight to Dr. Marinos'
opinion on remand,ced, but the reasons she articulated in her decision are not supported by substantial
evidence.

In addition to finding the ALJ erred in giving little weight to the opinion of Dr. Marinos, the undersigned notes the record was not sufficiently developed. There is no evidence Plaintiff's treating physicians provided medical source statements or completed RFC Assessments for Plaintiff, and no medical expert testified at the hearing regarding the impact of borderline personality disorder and depression on Plaintiff's ability to perform work on a consistent basis. An "ALJ should not be a mere umpire during disability proceedings, but must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Widmark v. Barnhart*, 454 F.3d 1063, 1068 (9th Cir. 2006) (citation and quotation marks omitted); *see also Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) ("[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." (internal quotation marks omitted)). This duty is "especially important" in cases involving disabilities based on mental health conditions. *See DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

**B.    Plaintiff's Credibility**

1.    Applicable Standard

Where there is no showing that a claimant is malingering, and where the record includes objective medical evidence establishing that a claimant suffers from an impairment that could reasonably produce the symptoms complained of, an ALJ can only make an adverse credibility finding based on substantial evidence under the "clear and convincing" standard. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). There ALJ did not indicate she believed Plaintiff was malingering. The ALJ's adverse credibility finding therefore must be based on clear and convincing substantial evidence. In addition, "the ALJ must identify what testimony is not

10

credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 489, 492-94 (9th Cir. 2015) ("To ensure that our review of the ALJ's credibility determination is meaningful, and that the claimant's testimony is not rejected arbitrarily, we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.").

An ALJ may consider numerous factors when weighing a claimant's credibility, including "inconsistencies either in [claimant's] testimony or between [his] testimony and [his] conduct, [claimant's] daily activities, . . . and testimony from physicians . . . regarding the nature, severity, and effect of the symptoms of which [claimant] complains." *Thomas*, 278 F.3d at 958-59 (internal quotation marks and citations omitted). If the ALJ's credibility finding is supported by substantial evidence in the record, the Court may not engage in second-guessing. *Id*.

2. Analysis

The ALJ found Plaintiff's allegations regarding her limitations "to be less than fully credible" based on: grossly normal mental status examination findings by Drs. Guillon, Joiner, Goetz, and Holmberg (AR 26-27); Plaintiff's noncompliance with recommended treatment despite evidence that treatment helped symptoms (AR 28); Plaintiff's activities of daily living that were ostensibly inconsistent with claims she was totally disabled (AR 28); and Plaintiff's testimony she stopped working because she became dissatisfied and bored with jobs, rather than because she was "unable" to perform these jobs (AR 29).

*i. Mental Status Examinations*

The ALJ erred in relying entirely on her own interpretation of treaters' notes describing mental status examinations. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(C)(3) ("We must exercise great care in reaching conclusions about your ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician . . . ."). There is no evidence in the record that a MSE would capture the symptoms that would preclude an individual with

11

borderline personality disorder from working. As discussed above, the fact Dr. Marinos noted many normal findings in Plaintiff's MSE did not preclude her from concluding Plaintiff was severely limited. The ALJ's reliance on the mental status examinations thus does not constitute clear and convincing substantial evidence.

### ii. Noncompliance with Recommended Treatment & Testimony

The Ninth Circuit has remarked that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted); *see also Pates-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009) ("[A] mentally ill person's noncompliance with psychiatric medications can be, and usually is, the result of the mental impairment itself, and therefore neither willful nor without a justifiable excuse." (collecting cases; internal citations and quotation marks omitted)). "[W]e do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions." *Garrison v. Colvin*, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (citing cases). The ALJ did not evaluate whether Plaintiff's noncompliance with treatment was the result of her diagnosed borderline personality disorder or depression. By failing to do so, the ALJ improperly punished Plaintiff for exercising poor judgment in seeking rehabilitation.

### iii. Activities of Daily Living

The ability to "perform various household chores such as cooking, laundry, washing dishes, and shopping" may constitute a clear and convincing reason to discount a claimant's testimony. *Thomas*, 278 F.3d at 959; *see also Burch*, 400 F.3d at 681 (ALJ may consider activities of daily living when evaluating claimant's credibility). The ALJ found Plaintiff's ability to drive, reside alone, perform light housework, shop for groceries, and care for her elderly father suggested that Plaintiff retained "a far greater degree of functionality that she alleged in connection with her application for social security benefits." AR 28. The ALJ does not acknowledge the evidence that Plaintiff lived alone in a cabin on her mother's property, that the cabin lacked running water so that Plaintiff had to visit her mother's house to shower, and that she

12

1   did so every couple of weeks when she was not working because she could not motivate herself to
2   do it more frequently (AR 41-43, 72-73); that Plaintiff received a cooked meal from a charitable
3   organization once a week and otherwise ate "crackers, cheese or candy" (AR 73-74; *see also* AR
4   267 (Plaintiff eats sandwiches; does not cook often)); and that Plaintiff drove only once per week
5   and performed all her errands at once (AR 67-68; *but see* AR 268 (Plaintiff drives to go shop
6   every other day when she is able to do so)). The ALJ also fails to acknowledge Plaintiff's
7   testimony that she showered for the hearing, and does not acknowledge that Plaintiff also may
8   have found the motivation to shower for periodic appointments at which she was noted to have
9   proper hygiene. AR 28, 72-73; *see also* AR 266 (stating psychiatric symptoms often interfere with
10  her ability to keep up with personal care, and that she has been treated for infections due to
11  hygiene failures).

While activities of daily living "may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment" (*Molina*, 674 F.3d at 1113), those activities the ALJ identified hardly contradict Plaintiff's claims. As the Ninth Circuit has noted, "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Garrison*, 759 F.3d at 1016 (internal quotation marks and citation omitted). The ALJ failed to recognize that Plaintiff's activities of daily living did not reflect Plaintiff's ability to work on a consistent basis.

*iv.   Testimony*

The ALJ discounted Plaintiff's credibility because she testified she quit jobs because she was "bored" or "dissatisfied" rather than because she was "unable" to perform them. AR 29. But again, the ALJ failed to evaluate whether these reactions were caused by Plaintiff's documented mental conditions. This was error, as it would punish Plaintiff for the very conditions she alleges are disabling. *See supra*.

13

## C. Failure to Account for Migraine Headaches

The ALJ found Plaintiff's headaches more than minimally limited Plaintiff's ability to perform basic work-related tasks, including interacting with the public (AR 30), but found that, on balance, the evidence was inconsistent with Plaintiff's allegations her migraines caused entirely work-preclusive restrictions as of December 31, 2013 (AR 28). In reaching this conclusion, the ALJ relied on the fact Plaintiff admitted appreciable benefits from steroid injections on multiple occasions, Plaintiff made no regular complaints of headaches between December 2010 and mid-June 2012, and her treaters did not recommend neurological care until October 2012. AR 28. This reasoning does not address the severity of Plaintiff's migraines between mid-June 2012 and her DIL of December 2013—well over one year. Between June 2012 and her DIL, Plaintiff was diagnosed as suffering from migraines and prescribed a number of medications to address her symptoms, including oxycodone and morphine injections. *See* AR 408-09 (April 2013), 415 (March 2013), 441-42 (January 2013), 594-95 (May 2013), 609 (April 2013), 612 (April 2013), 744-46 (June 2012). There is evidence Plaintiff's migraine medication exacerbate her depression. AR 63-64, 70. If migraines caused Plaintiff to be absent "two or more" days per month, the VE testified that Plaintiff would not be employable. *See* AR 91-92. The brief reasoning the ALJ articulated for not including absenteeism based on Plaintiff's migraines (including side effects from the medications) in her RFC is not based on substantial evidence.

## CONCLUSION

For the reasons stated above, the Court finds the ALJ erred in giving little weight to Dr. Marinos' opinion, in failing to develop the record, in finding Plaintiff not entirely credible, and in failing to fully consider the impact of Plaintiff's migraines after June 2012. "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Taylor*, 659 F.3d at 1235 (reversing and remanding for the consideration of new evidence instead of awarding benefits). For these reasons, and because the ALJ failed to fully and fairly develop the record

when evaluating Plaintiff's disability claim, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, **DENIES** Defendant's Cross-Motion for Summary Judgment, and **REVERSES** the ALJ's decision. This case is **REMANDED** for further administrative proceedings in accordance with this Order.

**IT IS SO ORDERED.**

Dated: May 12, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge

15